**GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant,**

v.

**Alberto URESTI, Appellee.**

**No. 1010.**

Court of Civil Appeals of Texas, Tyler.

June 30, 1977.

Rehearing Denied July 28, 1977.

George H. Spencer, Robert J. Rosenbach, Clemens, Spencer, Welmaker & Finck, San Antonio, for appellant.

Barry Snell, Bayne & Snell, LeLaurin, Adams, Eichelbaum & Sanders, San Antonio, for appellee.

DUNAGAN, Chief Justice.

This is an appeal from a summary judgment rendered on appellee, Alberto Uresti's, counterclaim of usury. Appellant, General Motors Acceptance Corporation (hereinafter referred to as "GMAC") brought an action against appellee, Alberto Uresti (hereinafter referred to as "Uresti"), for an alleged default on Uresti's part in the payment of monthly payments for a truck. Uresti's counterclaim alleging that GMAC, by not rebating any unearned time-price differential in its suit, had charged in excess of twice the amount of time-price differential permitted by statute. Uresti filed a motion for partial summary judgment, based upon GMAC's sworn petition, affidavit for sequestration, and the deposition of GMAC's special collector manager, E. L. Koehlor. The trial court, upon considering the motion for partial summary judgment, pleadings, Koehlor's deposition and his affidavit for sequestration granted summary judgment finding therein that GMAC had "accelerated the entire unpaid balance due on the contract made the basis of this suit, and did not rebate unearned time-price differential"; and that "by accelerating the balance and filing suit for the entire amount of unpaid principal plus unearned time-price differential, GMAC had, as a matter of law, charged time-price differential in excess of double the amount authorized by law." GMAC has appealed.

The facts of this case are undisputed. On January 14, 1975, Uresti purchased a GMC truck-trailer from San Antonio Truck Sales, executing a written contract under which he agreed to pay the balance in 48 monthly installments of $580.08 each. The contract was assigned by the dealer to GMAC. Uresti became disabled and stopped making payments on his contract. The contract provided for disability insurance benefits, but the benefits were limited to $250.00 per month and were insufficient to keep the payments current. On August 7, 1975 (approximately 8 months from the inception of the contract) GMAC filed suit, alleging as follows:

"Pursuant to the terms of said contract, Plaintiff has declared the total balance of said contract due and payable and the Defendant is hereby indebted to Plaintiff in the principal sum of TWENTY FIVE THOUSAND, FIVE HUNDRED TWENTY-THREE AND 52/100 DOLLARS

($25,523.52), together with FIVE HUNDRED AND NO/100 DOLLARS ($500.00) as reasonable attorneys' fees."

GMAC has filed an affidavit for sequestration, executed by Mr. E. L. Koehler who was special collection manager for GMAC. In the affidavit, Mr. Koehler stated under oath that:

"The amount of said indebtedness secured by said lien is TWENTY FIVE THOUSAND, FIVE HUNDRED TWENTY-THREE AND 52/100 DOLLARS ($25,523.52), together with reasonable attorney fees in the amount FIVE HUNDRED AND NO/100 DOLLARS ($500.00); that *all* of said indebtedness is just and unsatisfied and is now due." (Emphasis added).

Uresti answered, and thereafter, the deposition of Mr. Koehler was taken by Uresti's attorney. Mr. Koehler testified that it was his job to prepare delinquent accounts for litigation. He also testified that he had in fact signed the sequestration affidavit, and that the facts in it were correct. He specifically stated that when he swore that the indebtedness in the amount of "TWENTY FIVE THOUSAND, FIVE HUNDRED TWENTY-THREE AND 52/100 DOLLARS ($25,523.52)" was due, he was sure he was correct. He acknowledged that he had checked the figures. He testified that he had arrived at the figures by careful computation, just the way he always does.

Thereafter, Uresti amended his answer and asserted a counterclaim against GMAC, alleging that GMAC, by suing for and demanding the unearned portion of the time-price differential, was charging time-price differential in the amount of $6,306.50, when in fact the maximum amount to which GMAC was entitled was $1,082.25. After receiving Uresti's counterclaim, GMAC amended its petition. It continued to demand $25,523.52, but added the phrase "subject to a refund credit as provided in the retail installment contract which is Exhibit A hereto and as provided in Article

5069–7.04 Texas Revised Civil Statutes." Mr. Koehler's affidavit for sequestration was similarly amended. An affidavit was also filed by Mr. Koehler in opposition to Uresti's motion for summary judgment, in which he stated that GMAC has never "denied the right of the Defendant, Alberto Uresti, to receive a refund credit at the time of prepayment in full of the total indebtedness." The affidavit goes on to explain that the amount of the prepayment would be computed in accordance with the "Rule of 78ths." [1]

Mr. Koehler never disavowed his previous sworn statements and never contended that they were inadvertently made. GMAC continued to demand the total amount of the indebtedness, including the unearned time-price differential, stating only that a rebate would be made in accordance with the Rule of 78ths when Uresti actually prepaid the indebtedness.

GMAC brings forward three points of error:

(1) the court erred in holding that GMAC's original pleadings *alone* constituted an illegal charge of time-price differential where the original pleadings incorporated the contract provisions for statutory rebate and the pleadings were amended to specifically tender any rebate required by law;

(2) the court erred in holding that Art. 5069–7.04, which provides for a refund upon full payment by a buyer, requires a refund credit on acceleration of maturity and before any prepayment; and

(3) the court erred in holding as a matter of law that GMAC's original pleadings constituted an illegal charge of time-price differential under Art. 5069–7.03(1) because the summary judgment record at least raised a fact issue as to whether GMAC did make an illegal charge within the meaning of Art. 5069–8.01.

The essential questions presented in this appeal are:

---

1. The "Rule of 78ths" is a mathematical formula for refunding unearned interest when an installment note is paid before maturity. In Texas, this refund formula is found in Articles 5069–3.15, 4.01, 6.01 and 7.04, Tex.Rev.Civ. Stat.Ann.

(1) does the Consumer Credit Code permit a creditor to accelerate maturity on a retail installment contract without rebating the unearned portion of the time-price differential; and

(2) does a creditor "charge" excessive time-price differential by suing for and demanding such time-price differential.

These questions have been decided adversely to GMAC in *Moore v. Sabine National Bank,* 527 S.W.2d 209 (Tex.Civ.App. —Austin 1975, writ ref'd n.r.e.). The *Moore* case is virtually identical to this one. That case clearly holds that the creditor is not entitled to unearned time-price differential upon acceleration of maturity. The case also clearly holds that the plaintiff's notice of intention to repossess in its original petition and its sequestration affidavit demanding excessive time-price differential constituted a "charge" of unearned time-price differential in violation of the Texas Consumer Credit Code which became effective January 1, 1968. The *Moore* case was followed by the Waco Court of Civil Appeals in *Southwestern Investment Co. v. Mannix,* 540 S.W.2d 747 (Tex.Civ.App.1976, writ granted) in which the "charge" of excessive time-price differential was contained in a court pleading.

■ As a matter of fact, GMAC by its amended original petition did not eliminate its demand for excessive time-price differential. The prayer in GMAC's amended petition is for the entire amount of the indebtedness, including all the time-price differential both earned and unearned, subject to a refund credit as provided for in the installment contract and Art. 5069–7.04, V.A.C.S., together with interest as authorized by law. Article 5069–7.04 provides for prepayment of the installment contract only if the buyer prepays in full at any time before maturity. "Prepayment" is a payment *before* maturity. "Acceleration" is a change in the date of maturity from the future to the present. *Ramsey v. American Finance System of Atlanta, Inc.,* No. C–74– 2002A (N.D.Ga., March 25, 1975), 5 C.C.H. Consumer Credit Guide, Paragraph 98, 510; *Houston v. Atlanta Federal Savings and Loan Association,* No. C–74–119A (N.D.Ga., March 25, 1975), 5 C.C.H. Consumer Credit Guide, Paragraph 98, 553. Once the maturity date is accelerated to the present, it is no longer possible to prepay the debt before maturity. Any payment made after acceleration of the maturity date is made *after* maturity, not before.

■ Thus all the amended pleadings of GMAC did was to allege that appellee would be entitled to a rebate in accordance with the rule of 78ths if Uresti prepaid in full at any time *before* maturity, when in fact the date of maturity had already been accelerated and such "prepayment" was impossible. This is not a case where the buyer prepaid the installment contract. This is a case where default was made in the payments and the entire unpaid balance due was accelerated. The *Moore* case held that this was a "charge" of excessive time-price differential.

■ In determining the matter of rendering or affirming a summary judgment in favor of a party, the question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a plaintiff's claim or cause of action, but whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827 (Tex.1970); *Harrington v. Young Men's Christian Association of Houston and Harris County,* Texas, 452 S.W.2d 423 (Tex.1970); Rule 166–A(c), T.R. C.P. The burden of proof is upon the party moving for summary judgment and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American Reserve Insurance Co. v. San Antonio Plumbing Supply Company,* 391 S.W.2d 41, 47 (Tex.1965). The evidence upon such a motion must be viewed in the light most favorable to the party opposing the motion. All conflicts in the evidence are disregarded and the evidence which tends to support the position of the party opposing the motion is accepted

as true. *Parrott v. Garcia,* 436 S.W.2d 897, 899 (Tex.1969). We believe the movant (Uresti) has met the burden required of him.

The judgment of the trial court is affirmed.

McKAY, J., not participating.